

SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| In re: | ) | | |
|---|---|---|---|
| | ) | | |
| CHARLES K. SPENCER, | ) | Case No.: | 16-11722-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 12 |

## ORDER DENYING MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE (DKT. # 46)

This matter is before the Court on the Motion for Allowance of Administrative Expenses Pursuant to 11 U.S.C. § 503(b)(9) (the "Motion")(Dkt. # 46) filed by creditor Chickasaw Farm Services, Inc. ("Chickasaw") and the Response to the Motion (the "Response")(Dkt. # 62) filed by the debtor Charles K. Spencer (the "Debtor"). The Court held a hearing on September 7, 2016, in Oxford, Mississippi, at which Michael D. Tapscott appeared on behalf of Chickasaw and Jarret P. Nichols appeared on behalf of the Debtor. At the hearing, the parties requested to submit a stipulation of facts and briefs within 30 days, all of which were timely filed

1

(Stipulation, Dkt. # 87; Debtor Brief, Dkt. # 100; Chickasaw Brief, Dkt. # 101). The Court then took the matter under advisement.

The Court has reviewed the stipulated facts, pleadings and relevant law, and for the reasons set forth below, finds and concludes that the debt owed to Chickasaw by the Debtor is not entitled to § 503(b)(9)[1] administrative priority.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O).

## II. FACTS[2]

The Debtor and his son, Brad Spencer, operate a farm together as a general partnership (the "Partnership"). Chickasaw and the Debtor agree that Chickasaw sold and delivered $45,466.00 worth of farm supplies to the

---

[1] All statutory references are to Title 11, United States Code (the "Bankruptcy Code"), unless otherwise noted.

[2] The parties stipulated to these facts (Stipulation, Dkt. # 87), and as such, the facts are undisputed. To the extent any findings of fact are conclusions of law, they are adopted as such, and vice versa.

Partnership within the 20 days before May 19, 2016, the day on which the Debtor filed his bankruptcy petition (Dkt. # 1).[3] The parties also stipulated that the farm supplies were sold in the ordinary course of the Debtor's business.[4]

The Debtor does not dispute that he is jointly and severally liable for the debt, as all general partners are, nor does he dispute the amount of the debt. The Debtor does dispute that Chickasaw's claim is entitled to administrative priority in this bankruptcy case.

## III. ANALYSIS

It is undisputed that partners in a general partnership are jointly and severally liable for the debts of that partnership. *Williams v. Owen*, 613 So.2d 829, 834-35 (Miss. 1993). The Debtor is a general partner in the Partnership, and Chickasaw therefore holds an unsecured claim against the Debtor in this bankruptcy case. In the Bankruptcy Code, not all unsecured claims are treated equally. Congress chose to grant certain unsecured claims priority status, meaning those claims are paid before general unsecured claims. 11 U.S.C. § 507.

Chickasaw has moved for an entry of an order approving an administrative expense claim under § 503(b)(9). Section 503(b)(9) provides

---

[3] The parties also acknowledge that Brad Spencer denies that the Partnership purchased the supplies.

[4] Chickasaw was actually the seller, and the Partnership was the buyer.

3

for administrative priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Administrative expense claims have priority over all other unsecured claims in a bankruptcy case, other than those for domestic support obligations and associated trustee expenses. 11 U.S.C. § 507(a).

In order for its claim to be allowed as a § 503(b)(9) administrative expense, Chickasaw must establish the following elements: "(1) [Chickasaw] sold 'goods' *to the debtor*; (2) the goods were received *by the debtor* within twenty days prior to filing; and (3) the goods were sold *to the debtor* in the ordinary course of business." *In re World Imports,* 516 B.R. 296, 297 (Bankr. E.D. Pa. 2014)(emphasis added); *See also In re Pilgrim's Pride Corp.*, 421 B.R. 231, 235 (Bankr. N.D. Tex. 2009). The issue before the Court, then, is whether Chickasaw's sale and delivery of the farm supplies to the Partnership, as stipulated by the parties, constitutes selling and delivering goods *to the debtor*, as required by § 503(b)(9). Mississippi law applies to determine the answer to this question. *See In re Superior Boat Works, Inc.,* 438 B.R. 878, 880 (providing that applicable state law controls questions of corporate law).

4

The Debtor maintains that since the supplies were sold and delivered to the Partnership and not to him individually, Chickasaw fails to meet the requirements for a § 503(b)(9) administrative expense. Conversely, Chickasaw contends that its debt is a result of sales to the Partnership for which the Debtor is jointly and severally liable, citing in support of its argument a 1932 Mississippi Supreme Court case explaining that general partnerships are not independent legal entities, distinct from their partners, and that property is owned by the individuals and not the partnership. *Nichols v. State*, 144 So. 374, 375 (Miss. 1932). Chickasaw argues that these legal principles form the basis of its entitlement to an administrative expense claim: because the Partnership is not a separate legal entity and does not own property in its own name, a sale to the Partnership is in actuality a sale to the individual partners.

While this was the state of the law in Mississippi in 1932, Mississippi's adoption of the Uniform Commercial Code and, later, the Revised Uniform Partnership Act in 2004, changed the law. Now, Mississippi law is clear that "[a] partnership is an entity distinct from its partners." MISS. CODE ANN. § 79-13-201(a) (2005). *See Gulf National Bank v. Franke (In re Katz)*, 563 F.2d 766, 768 (5th Cir. 1977) ("Under the UCC, a partnership is a legal entity" and "may be a debtor.") The adoption of these acts made Mississippi partnership law more like Mississippi corporate law on the subject. *See In re Monsivais,*

5

274 B.R. 263, 265 (Bankr. W.D. Tex. 2002)(interpreting analogous Texas law).

Likewise, "[a] partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily." MISS. CODE ANN. § 79-13-501 (2005). "The distinction between property belonging to a partnership of which the debtor was partner, and property belonging to the debtor-partner, is well-established in bankruptcy law." *Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999)(citing *McGahren v. First Citizens Bank & Trust Co.* (*In re Weiss*), 111 F.3d 1159, 1166 (4th Cir. 1997), *cert. denied,* 522 U.S. 950 (1997); *In re Palumbo,* 154 B.R. 357, 358 (Bankr.S.D.Fla.1992) (noting "that the assets of a partnership are not to be administered in a partner's bankruptcy proceeding since a partnership is a separate entity from its partners under bankruptcy law"); *In re Funneman,* 155 B.R. 197, 200 (Bankr. S.D. Ill. 1993) ("[I]t is well settled that assets owned by a partnership are not included in the bankruptcy estate of an individual partner."). The only partnership property before the court during an individual's bankruptcy is the partner's interest in the partnership itself. *In re Funneman,* 155 B.R. at 200. The supplies sold and delivered by

Chickasaw to the Partnership became the property of the Partnership.[5] It follows, then, that the supplies sold and delivered to the Partnership could not also simultaneously be sold and delivered to a separate legal entity, the Debtor.

The Debtor cites to a Michigan bankruptcy decision in support of his position. *In re Plastech Engineered Products, Inc.*, 2008 WL 5233014 (Bankr. E.D. Mich. 2008). While not precisely on point, the case is instructive. In *Plastech*, the debtor's vendor sold products to the debtor within 20 days of the petition date. However, the vendor drop-shipped the goods directly to the debtor's customer, and not to the debtor. The vendor filed a § 503(b)(9) administrative expense claim. The bankruptcy court ruled that in order to qualify as a § 503(b)(9) claim, the debtor must receive actual goods, and not simply the value of the goods. *Id.* at *4. Since the record in that case was not fully developed, the court did not rule on the ultimate issue, finding instead that it did not have sufficient information upon which to determine in what capacity the customer received the goods (i.e., for itself or in some representative capacity for the debtor). The bankruptcy court implied that if the goods were received by the customer in a representative capacity for the debtor, then the claim would be entitled to administrative priority, with the

---

[5] In fact, a general partnership could file its own bankruptcy case. *See, e.g., In re Texas Rangers Baseball Partners*, 434 B.R. 393 (Bankr. N.D. Tex. 2010); *In re Clinton Court*, 160 B.R. 57 (Bankr. E.D. Penn. 1993); *In re Funneman*, 155 B.R. at 200. The assets of the general partnership would then be property of that bankruptcy estate. 11 U.S.C. § 541.

converse also being true. *Id.* No argument has been made, nor has there been any evidence adduced, that the Partnership received the farm supplies in a representative capacity for the Debtor. Rather, it is clear from the stipulation that the supplies were sold to and delivered to the Partnership for the Partnership's farm operations.

## IV. CONCLUSION

Because Mississippi law is clear that a general partnership is a separate legal entity, and because the parties stipulated that the farm supplies were delivered to the Partnership, and not to either of the general partners, the resulting debt does not satisfy the elements of an administrative claim under § 503(b)(9). However, because as a general partner, the Debtor is personally, jointly and severally liable for the debt, Chickasaw has a general unsecured claim in the Debtor's bankruptcy case for $45,466.00. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that

1. the Motion is **DENIED**.

2. Chickasaw's proof of claim is disallowed as a § 503(b)(9) administrative expense priority claim, but is allowed as a general unsecured claim in the amount of $45,466.00.

##END OF ORDER##